Filed 5/16/25  P. v. Marroquin CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE, | B335924 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. LA087959) |
| v. | |
| JOSHUA MARROQUIN, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Thomas Rubinson, Judge.  Affirmed with directions.

Jonathan E. Demson, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Scott A. Taryle, Supervising Deputy Attorney General, and David E. Madeo and Sophia A. Lecky, Deputy Attorneys General, for Plaintiff and Respondent.

# INTRODUCTION

In 2019 Joshua Marroquin pleaded no contest to attempted murder and admitted he personally used a firearm and inflicted great bodily injury. The trial court sentenced him to 22 years in prison pursuant to a negotiated disposition.

Three years later, Marroquin filed a petition under Penal Code section 1172.6[1] (former section 1170.95) for resentencing. The superior court appointed counsel, ordered the parties to submit briefs, held a hearing, and denied the petition. The court ruled Marroquin's plea and admissions demonstrated he was the actual shooter and therefore ineligible for relief as a matter of law.

Marroquin argued the superior court erred because, according to Marroquin, the record of conviction does not establish he was the actual perpetrator. To the extent the superior court considered the preliminary hearing transcript, Marroquin argues, doing so was "inconsistent" with section 1172.6, an argument the Supreme Court rejected in *People v. Patton* (2025) 17 Cal.5th 549 (*Patton*).

The superior court stated it was not considering the preliminary hearing transcript. Nevertheless, the court may have erred in concluding Marroquin's plea and admissions showed he was the actual shooter. Any error, however, was harmless because the evidence in the preliminary hearing transcript, which courts may consider, showed Marroquin was the actual shooter. Therefore, we affirm the court's order denying Marroquin's petition but, pursuant to *Patton*, *supra*, 17 Cal.5th

---

[1]     Statutory references are to the Penal Code.

at page 569, we direct the superior court to give Marroquin an opportunity to file an amended petition.

## FACTUAL AND PROCEDURAL BACKGROUND

A.    *Marroquin Pleads No Contest to Attempted Murder*

One evening in February 2018 Kevin Gonzalez, his girlfriend Lucy J., and Lucy's sister were socializing in the back room of a bar.  A man approached Gonzalez and said he "wanted" Lucy's sister, to which Gonzalez replied, "No."  Gonzalez said to the two women that they should all leave the bar.  Gonzalez walked outside, saw a group of men, and said, "Everything is cool."  One of the men told Gonzalez to "shut up," took a handgun from his waistband, and fired one shot at Gonzalez, hitting him in the hip.  Surveillance video captured the shooting.

At the preliminary hearing Detective John Dunlop of the Los Angeles Police Department testified that he had investigated cases involving the Canoga Park Alabama gang for 10 to 12 years and that he was familiar with members of the gang.  Detective Dunlop stated the bar was a "hangout" for the gang.  As the prosecutor showed the detective still photographs from the surveillance video on the night of the shooting, the detective described what each photograph depicted: a person with a "high-and-tight haircut" wearing dark colored clothing pulling a semiautomatic handgun out of his waistband; the shooter extending his right hand "directly out in front of him"; Gonzalez falling down; and the shooter walking away.  Referring to

3

another still photograph from the video, Detective Dunlop stated the shooter's "entire right arm" was "sleeved to the wrist."[2]

Detective Dunlop described how he identified Marroquin as the shooter. The detective had investigated another shooting that took place at the same bar the previous year (2017), and one of the individuals identified in the bar was Marroquin, a member of the Canoga Park Alabama gang. When Detective Dunlop saw a still photograph of the shooter from this case, he recognized him, but could not recall how or from where. The detective asked officers who had worked on the 2017 shooting, "I know we've seen this guy before, where do I recognize him from?" The officers told Detective Dunlop that the person in the still photograph was Marroquin, and the detective said, "You're right." Detective Dunlop recalled speaking about Marroquin in connection with the prior shooting, but acknowledged he did not make personal contact with him in 2017. Detective Dunlop stated that, when he arrested Marroquin in this case, Marroquin appeared to be the person the detective saw on the surveillance video, and the detective identified Marroquin in court. Detective Dunlop told the court that he based his identification on the surveillance video, color photographs of Marroquin, the tattoos (which "were exactly the same"), and the discussions he had with the previous "contact officers."

In June 2019 Marroquin pleaded no contest to attempted murder and admitted he personally used a firearm, within the meaning of section 12022.53, subdivision (b), and personally inflicted great bodily injury, within the meaning of

---

[2] Meaning his arms were "'completely tattooed from the shoulder to the hands.'" (*Jones v. Secretary, Department of Corrections* (11th Cir. 2012) 487 Fed.Appx. 563, 566, fn. 4.)

4

section 12022.7, subdivision (a).  The trial court sentenced Marroquin to a prison term of nine years for the attempted murder conviction, plus 10 years for the firearm enhancement and three years for the great-bodily-injury enhancement, for a total sentence of 22 years.

      B.     *Marroquin Petitions for Resentencing, and the Superior Court Denies His Petition*

In 2022 Marroquin filed a petition for resentencing under section 1172.6.  Marroquin checked boxes on a form petition next to allegations required for a facially sufficient petition (§ 1172.6, subd. (a))[3] and asked the court to appoint counsel to represent him.  Marroquin did not provide any specific facts to support the allegations in his petition.  After the court appointed counsel, the parties submitted briefs.  The prosecutor argued the record of conviction conclusively established Marroquin was ineligible for relief as a matter of law.  Referring to evidence presented at the preliminary hearing, as well as to the amended information that charged only Marroquin with attempted murder, the prosecutor argued Marroquin "was the shooter and acted with express malice."  Counsel for Marroquin argued Marroquin stated a prima facie case for relief because the superior court "must accept the asserted facts as true" and the prosecutor's argument "as to [the] alleged 'facts' must be [made] at the evidentiary . . . hearing."  Counsel for Marroquin also argued Detective Dunlop's testimony was inadmissible because he did not have personal

---

[3]     For example, Marroquin alleged he "could not presently be convicted of murder or attempted murder because of changes made to Penal Code §§188 and 189, effective January 1, 2019."

knowledge of Marroquin's appearance "prior to the [surveillance] video being taken."[4]

At the hearing to determine whether Marroquin made a prima facie showing for relief, the court stated the record of conviction consisted of the amended information (which included an allegation under section 12022.53, subdivision (d)), the abstract of judgment, the waiver form Marroquin signed when he pleaded no contest, and his admissions of the allegations under sections 12022.53, subdivision (b), and 12022.7, subdivision (a). The court concluded it was "not necessary to consider the facts as testified to at the preliminary hearing," which the court commented "would be improper factfinding at the prima facie stage," and the court stated, "I'm not doing that." The court ruled the documents "that have been determined by the courts of appeal to be proper . . . to consider as part of the record of conviction" showed Marroquin "was the actual shooter in the case." The court stated: "That was the theory upon which the case was filed and charged, and . . . the sole theory upon which he was convicted in the case." The court denied the petition, and Marroquin timely appealed.

While the appeal was pending, the Supreme Court held in *Patton*, *supra*, 17 Cal.5th 549 that "the record of conviction the parties may consult at the prima facie stage includes a preliminary hearing transcript preceding a guilty plea" and that a court may "rely on unchallenged, relief-foreclosing facts within a preliminary hearing transcript to refute conclusory, checkbox allegations" in a petition. (*Id.* at pp. 568, 564.) At our request, the parties submitted supplemental briefs on the impact of *Patton* on this appeal.

---

[4] Marroquin does not make this argument on appeal.

6

## DISCUSSION

A.    *Applicable Law and Standard of Review*

Effective 2019, the Legislature substantially modified the law governing accomplice liability for murder by eliminating the natural and probable consequences doctrine as a basis for finding a defendant guilty of murder and significantly narrowing the felony-murder exception to the malice requirement for murder. (*Patton*, *supra*, 17 Cal.5th at p. 558; *People v. Arellano* (2024) 16 Cal.5th 457, 467-468; *People v. Curiel* (2023) 15 Cal.5th 433, 448-449 (*Curiel*); see *People v. Strong* (2022) 13 Cal.5th 698, 707-708 [felony murder]; *People v. Gentile* (2020) 10 Cal.5th 830, 842-843 [natural and probable consequences].)  Section 188, subdivision (a)(3), now prohibits imputing malice based solely on a person's participation in a crime and requires proof of malice to convict a defendant of murder, except under the revised felony-murder rule.  (§§ 188, subd. (a)(3), 189, subd. (e); *Patton*, at p. 558; *Arellano*, at pp. 467-468; *Curiel*, at p. 448.)  Effective 2022, the Legislature amended section 1172.6 to apply to persons convicted of "attempted murder under the natural and probable consequences doctrine."  (§ 1172.6, subd. (a); see *Patton*, at p. 558; *People v. Delgadillo* (2022) 14 Cal.5th 216, 223, fn. 3; *People v. Glass* (2005) 110 Cal.App.5th 922; *People v. Rodriguez* (2024) 103 Cal.App.5th 451, 457.)

Section 1172.6 authorizes a person convicted of felony murder, murder under the natural and probable consequences doctrine, or attempted murder under the natural and probable consequences doctrine to petition the superior court to vacate the conviction and resentence the defendant on any remaining counts

if he or she could not now be convicted of murder or attempted murder because of the legislative changes to the definitions of murder.  (See *People v. Arellano*, *supra*, 16 Cal.5th at pp. 468-469; *Curiel*, *supra*, 15 Cal.5th at pp. 449-450.)  If a section 1172.6 petition contains all the required information, the court must appoint counsel to represent the petitioner if requested.  (§ 1172.6, subd. (b)(1)(A), (b)(3); *Patton*, *supra*, 17 Cal.5th at p. 563; *People v. Lewis* (2021) 11 Cal.5th 952, 962-963 (*Lewis*).)  The People must file a response to the petition, the petitioner may file a reply, and the court must hold a hearing to determine whether the petitioner has made a prima facie showing he or she is entitled to relief.  (§ 1172.6, subd. (c); *Patton*, at p. 556.)

In deciding whether a petitioner has made a prima facie showing for relief under section 1172.6, the court "looks beyond the face of the petition."  (*Patton*, *supra*, 17 Cal.5th at p. 563.)  The court may consider the record of conviction, including the "preliminary hearing transcript preceding a guilty plea" (*ibid.*), which will "necessarily inform the trial court's prima facie inquiry under section [1172.6], allowing the court to distinguish petitions with potential merit from those that are clearly meritless."  (*Lewis*, *supra*, 11 Cal.5th at p. 971; see *Patton*, at p. 563; *Curiel*, *supra*, 15 Cal.5th at pp. 463-464.)  "In reviewing any part of the record of conviction at this preliminary juncture, a trial court should not engage in 'factfinding involving the weighing of evidence or the exercise of discretion.'"  (*Lewis*, at p. 972; see *Patton*, at p. 563; *People v. Glass*, *supra*, 110 Cal.App.5th at p. 927.)  "At the prima facie stage, a court must accept as true a petitioner's allegation that he or she could not currently be convicted of a homicide offense because of

changes to section 188 or 189 made effective January 1, 2019, unless the allegation is refuted by the record." (*Curiel*, at p. 463.)

If "'the defendant has made a prima facie showing of entitlement to relief, "the court shall issue an order to show cause."'" (*People v. Arellano*, *supra*, 16 Cal.5th at p. 469.) "We apply de novo review on appeal from the court's denial of a petition for resentencing at the prima facie stage, including its determination that the record of conviction establishes the petitioner is not entitled to resentencing as a matter of law." (*People v. Jackson* (2025) 110 Cal.App.5th 128, 146; see *People v. Estrada* (2024) 101 Cal.App.5th 328, 337; *People v. Flores* (2023) 96 Cal.App.5th 1164, 1170; *People v. Bodely* (2023) 95 Cal.App.5th 1193, 1200.)

B.  *The Court May Have Erred in Concluding Marroquin's Plea and Admissions Established He Was the Shooter*

As discussed, the superior court ruled Marroquin's admissions he personally used a firearm and personally inflicted great bodily injury (along with the amended information, abstract of judgment, and Marroquin's plea form) "made it clear" Marroquin "was the actual shooter in the case." The People argue the charges and allegations in the amended information "reflect [Marroquin's] participation as the actual shooter and sole participant." But they don't, at least not "conclusively" (*People v. Strong*, *supra*, 13 Cal.5th at p. 708). Although the information named only Marroquin as the defendant, "a charging decision does not establish any facts as a matter of law." (*People v. Estrada*, *supra*, 101 Cal.App.5th at p. 339.) A "single charging document does not foreclose the possibility of other people having

9

been charged for related crimes." (*Ibid.*) In addition, the amended information "did not foreclose the prosecution from presenting imputed malice before a jury regardless of whether it charged others." (*Ibid.*)

Nor did Marroquin's admission he personally used a firearm, within the meaning of section 12022.53, subdivision (b), establish as a matter of law he was the actual shooter. Section 12022.53, subdivision (b), states: "Notwithstanding any other law, a person who, in the commission of a felony specified in subdivision (a), personally uses a firearm, shall be punished by an additional and consecutive term of imprisonment in the state prison for 10 years."[5] The "finding of personal use, however, would not in itself prove [the] defendant was the actual killer." (*People v. Jones* (2003) 30 Cal.4th 1084, 1120; see *ibid.* [jury's finding the defendant personally used a firearm under section 12022.5 did not prove he was the actual killer]; see also *People v. Davenport* (2021) 71 Cal.App.5th 476, 485 [defendant's admission he personally used a firearm under section 12022.5, subdivision (a), in committing second degree murder "did not preclude the possibility of prosecution under a felony-murder theory"], disapproved on another ground in *Patton*, *supra*, 17 Cal.5th at p. 569, fn. 12.) As the Supreme Court explained: "If two robbers display guns to intimidate robbery victims and one shoots and kills a victim, both robbers could be found to have

---

[5] The list of felonies subject to a firearm enhancement under section 12022.53, subdivision (b), includes attempted murder. (§ 12022.53, subd. (a)(18).)

10

personally used a gun in the robbery and the felony murder, even though only one is the actual killer." (*Jones*, at pp. 1119-1120.)[6]

Marroquin's admission he personally inflicted great bodily injury similarly does not establish his role as the direct perpetrator of the attempted murder.[7] Section 12022.7, subdivision (a), states: "Any person who personally inflicts great bodily injury on any person other than an accomplice in the commission of a felony or attempted felony shall be punished by an additional and consecutive term of imprisonment in the state prison for three years." In enacting section 12022.7, "the Legislature intended to impose an additional penalty for causing great bodily injury only on those principals who perform the act that directly inflicts the injury, and that one who merely aids, abets, or directs another to inflict the physical injury is not subject to the enhanced penalty of section 12022.7." (*People v. Cole* (1982) 31 Cal.3d 568, 571; accord, *People v. Ollo* (2021)

---

[6] Some courts have held, following an evidentiary hearing under section 1172.6, subdivision (d)(3), the admission of personally using a firearm established the defendant was the actual killer. (See, e.g., *People v. Villagrana* (2025) 108 Cal.App.5th 200, 206 ["*People v. Jones* [, *supra*, 30 Cal.4th 1084] does not apply where . . . the only person who admitted to using a firearm during the commission of the offense is [the] appellant"]; *People v. Garrison* (2021) 73 Cal.App.5th 735, 744 [where there "was no evidence that anyone used the gun just for intimidation," the defendant's admission "to use of a handgun in the course of the murder . . . necessarily was an admission that he was the shooter"].)

[7] The People do not argue Marroquin's admission he inflicted great bodily injury necessarily means he was convicted as the direct perpetrator of the attempted murder.

11

11 Cal.5th 682, 692.) Nevertheless, in the context of the prima facie inquiry under section 1172.6, an admission the defendant personally inflicted great bodily injury, even when coupled with an admission the defendant personally used a deadly or dangerous weapon, does not prove as a matter of law the defendant was the actual shooter. (See, e.g., *People v. Muhammad* (2024) 107 Cal.App.5th 268, 279 [defendant's admission he personally inflicted great bodily injury on the victim within the meaning of section 12022.7, subdivision (a), was "not dispositive" on the question whether the defendant was the sole, direct perpetrator], review granted Feb. 19, 2025, S288860; *People v. Estrada*, *supra*, 101 Cal.App.5th at p. 338 [defendant's "bare admission of the enhancements for personal use of a deadly weapon (§ 12022, subd. (b)(1)) and infliction of great bodily injury (§ 12022.7, subd. (a)) do not establish that he acted with the intent to kill or refute that he was convicted on a theory of imputed malice"].)

C. *But the Preliminary Hearing Transcript Conclusively Showed Marroquin Was the Actual Shooter*

Any error in concluding Marroquin's admissions under sections 12022.53, subdivision (b), and 12022.7, subdivision (a), showed he was the direct perpetrator of the attempted murder, however, was harmless. "Typically, when an 'error is purely one of state law, the *Watson*[8] harmless error test applies.'" (*Lewis*, *supra*, 11 Cal.5th at p. 973; accord, *People v. Beaudreaux* (2024) 100 Cal.App.5th 1227, 1239; *People v. Hurtado* (2023) 89 Cal.App.5th 887, 892; see *People v. Flores* (2022)

---

8      *People v. Watson* (1956) 46 Cal.2d 818.

12

76 Cal.App.5th 974, 986 ["To demonstrate prejudice from the denial of a section [1172.6] petition before the issuance of an order to show cause, the petitioner must show it is reasonably probable that, absent error, his or her petition would not have been summarily denied without an evidentiary hearing."], disapproved on another ground in *Patton*, *supra*, 17 Cal.5th at p. 569, fn. 12; see also *People v. Delgadillo*, *supra*, 14 Cal.5th at p. 233 [despite the Court of Appeal's failure to notify the defendant that his appeal would be dismissed, the defendant was not entitled to any relief under section 1172.6 because "the record here makes clear that [the defendant] was the actual killer and the only participant in the killing"].)  Here, the record of conviction, which includes the preliminary hearing transcript (*Patton*, at p. 564), showed Marroquin was the sole actual shooter and therefore ineligible for relief as a matter of law.

Lucy testified at the preliminary hearing one shooter fired at Gonzalez.  Detective Dunlop testified that he reviewed the surveillance video and photographs of Marroquin from a previous investigation and that Marroquin was the shooter.  Observing that Marroquin's tattoos and the tattoos on the shooter were identical, the detective identified Marroquin as the shooter in court.  The uncontradicted evidence in the record of conviction conclusively refuted Marroquin's allegation he could not now be convicted of attempted murder because of the 2019 legislative changes to the statutes defining murder.  As the direct perpetrator of the attempted murder, Marroquin is ineligible for relief as a matter of law.  (See *People v. Morales* (2024) 102 Cal.App.5th 1120, 1132, 1134 [where the verdicts indicated the jury found the defendant "was the direct perpetrator of the attempted premeditated murder," the superior court "properly

denied [the defendant's] section 1172.6 petition at the prima facie stage"]; see also *People v. Garcia* (2022) 82 Cal.App.5th 956, 973 ["As a matter of law, resentencing relief under section 1172.6 is not available to an 'actual killer.'"].)

Marroquin argues "the strength of [Detective Dunlop's] identification is clearly a factual issue." But Marroquin did not allege any specific facts or introduce any evidence to dispute the detective's identification. (See *Patton*, *supra*, 17 Cal.5th at p. 565 ["a section 1172.6 petitioner who, despite having access to counsel upon submission of a facially sufficient petition, offers only conclusory allegations of entitlement to relief, in response to a record of conviction that demonstrates the petitioner's conviction was under a still-valid theory, has not, thereby, made a prima facie showing"].) Or at least he hasn't yet.

Marroquin argues in the alternative that, if he did not make a prima facie showing, "the appropriate disposition consistent with *Patton* would be to remand the case to the superior court with directions for that court to consider an amended petition." The People argue that the Supreme Court in *Patton* "did not hold that all cases in this posture merit remand" and that "remand would be unwarranted here" because "nothing in the record supports the possibility of an alternate direct perpetrator, nor has [Marroquin] ever offered one." It is true that Marroquin has not (yet) pointed to any "specific facts that identify someone else as the direct perpetrator." (*Patton*, *supra*, 17 Cal.5th at p. 567.) But under *Patton* Marroquin is entitled to an opportunity to allege such specific facts.

In *Patton*, *supra*, 17 Cal.5th 549 the defendant pleaded no contest to attempted murder and admitted the firearm allegation under section 12022.53, subdivision (c). (*Patton*, at p. 557.) As in

14

this case, the defendant's petition for resentencing under section 1172.6 in *Patton* consisted of checked boxes next to statements "indicating his belief that he met the statutory requirements for relief." (*Patton*, at p. 563.) And, as in this case, at the preliminary hearing an officer "recounted watching surveillance video" of the shooting and, based on "previous encounters" with the defendant, identified him as the shooter. (*Id.* at p. 557.) The Supreme Court in *Patton* concluded that, even though the record of conviction refuted the defendant's "conclusory checkbox allegations," the defendant, "out of an abundance of caution," was entitled to "a remand to the superior court with directions for that court to consider an amended petition" should the defendant "seek to file one." (*Id.* at pp. 569-570.) Same for Marroquin.[9]

---

[9] Marroquin argues the superior court's order denying his petition without issuing an order to show cause also violated his due process rights. Because Marroquin is ineligible for relief as a matter of law, there was no due process violation. (See *People v. Fisher* (2023) 95 Cal.App.5th 1022, 1030, fn. 7 ["Given our conclusion that [the defendant] is ineligible for relief as a matter of law," his argument that the court's summary denial of his petition violated his due process rights "necessarily fails."].)

## DISPOSITION

The superior court is directed to consider an amended petition should Marroquin, within 30 days after this court issues its remittitur, seek to file one. The court's order denying Marroquin's petition is otherwise affirmed.

SEGAL, J.

We concur:

MARTINEZ, P. J.

STONE, J.